**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

REUBEN RANKE,

        Plaintiff,                   Case No. 2:23-cv-11300
                                           District Judge Nancy G. Edmunds

v.                                    Magistrate Judge Anthony P. Patti

WILLIAM FEDERSPIEL, et al.,

        Defendants.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION TO DISMISS ON THE BASIS OF
EXHAUSTION (ECF NO. 30)**

**I.**     **RECOMMENDATION**: Because there is no question that Plaintiff did not

exhaust the grievance procedure, the Court should **GRANT** Defendants' motion to

dismiss. (ECF No. 30.)

**II.**     **REPORT:**

        **A.**     **Introduction**

        Plaintiff Reuben Ranke, a state prisoner, initiated this action on May 31,

2023, against various Saginaw County employees, officials and/or agents,

including: Sherriff William Federspiel, Jail Administrator David Kerns, Circuit

Court Chief Judge Darnell Jackson, and Jail Chaplain Andy "Doe."  (ECF No. 1.)

Plaintiff brings religious discrimination and related retaliation and policy claims in

connection with allegedly being deprived of kosher meals at the Saginaw County Jail ("SCJ") while he was a pretrial detainee. (ECF No. 1.)  He asserts five claims: (1) Count 1, alleging his kosher meals were "wrongfully removed" from him and he was instead given non-kosher meals, in violation of the First and Fourteenth Amendments; (2) Count 2, alleging Defendants violated his First Amendment rights when they retaliated against him for filing grievances by removing his non-kosher meals; (3) Count 3, alleging that Defendants' failure to reinstate his kosher meals was another violation of his First and Fourteenth Amendment rights; (4) Count 4, alleging Defendants again violated the First and Fourteenth Amendment by failing to provide Passover meals; (5) Count 5, alleging "continuing retaliation" of the First Amendment by failing to provide kosher meals for Passover; (6) Count 6, alleging a lack of policy to provide religious food at SCJ; (7) Count 7, alleging disparate treatment under the Fourteenth Amendment; and, (8) Count 8, alleging interference with the courts based on Plaintiff not receiving a scheduling order in Case No. 21-11610, while he was at SCJ.

On December 6, 2023, Judge Nancy G. Edmunds referred this case to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 14.)  Earlier in this case, I issued a report and recommendation,

recommending that Judge Edmunds dismiss the judicial defendant, Darnell Jackson, on the basis of immunity.  (ECF No. 22.)  Plaintiff objected (ECF No. 33), but Judge Edmunds overruled the objections and adopted my report and recommendation (ECF No. 36).

On March 22, 2024, Defendants filed a motion to dismiss, making various alternative arguments why Plaintiff's complaint should be dismissed.  (ECF No. 30.)  The first argument asserts that it is uncontroverted that Plaintiff did not exhaust the grievance procedure before bringing his action.  Because Defendants are correct, and because that issue is determinative, the Court should dismiss the complaint for failure to exhaust without reaching the other arguments.

**B.    Background**

1.  Plaintiff Reuben Ranke was incarcerated in the Saginaw County Jail from August 24, 2020 to April 22, 2021. (ECF No. 1, PageID.2; ECF No. 30, PageID.204; ECF No. 37, PageID.405.)

2.  Plaintiff is currently in the Federal Bureau of Prisons. (*Id*., PageID.2; ECF No. 30, PageID.204; ECF No. 37, PageID.405.)

3.  Plaintiff claims that while he was incarcerated in the Saginaw County Jail, he was improperly denied religious materials/services and kosher meals, and his right of access to the courts was interfered with. (ECF No. 1, PageID.8-18; ECF No. 30, PageID.204; ECF No. 37, PageID.405.)

8.   Plaintiff admits that shortly after his arrival at the Jail, he requested and began receiving kosher meals. (ECF No. 1, PageID.8; ECF No. 30, PageID.205; ECF No. 37, PageID.405.)

9.   Plaintiff claims there were several times he received improperly served food, non-kosher food, or was missing protein, in particular noting the switch from carrots to iceberg lettuce, which "has very little nutritional value." (ECF No. 1, PageID.8-9; ECF No. 30, PageID.205; ECF No. 37, PageID.405.)

10.  Plaintiff filed multiple grievances regarding these issues. (ECF No. 1, PageID.8; ECF No. 30, PageID.205; ECF No. 37, PageID.405.)

12.  Plaintiff met with Defendant Kerns. Kerns told him that, while investigating Plaintiff's grievances, he discovered Plaintiff violated rules regarding religious meals.  (ECF No. 30, PageID.205; ECF No. 37, PageID.405.) Defendants allege that these rules violations − which they further claim were admitted by Plaintiff − included "trading his kosher food to other inmates, eating from other inmates' non-kosher trays, and eating non-kosher foods." (ECF No. 30, PageID.205.)

13.  Plaintiff admits the Inmate Guide containing these rules was available to him, but claims "that the Guide did not have any policies or procedures regarding religious meals." (ECF No. 30, PageID.205-206; ECF No. 37, PageID.405.)

16. Plaintiff alleges that neither Kerns nor Federspiel granted his requests for reinstatement of the kosher meals. (ECF No. 30, PageID.206; ECF No. 37, PageID.406.)

17. Plaintiff claims that the Sheriff's Department has no policy protecting inmates' rights to religious foods. (ECF No. 30, PageID.206; ECF No. 37, PageID.406.)

18. Plaintiff further claims that he was not allowed to have a copy of the Jewish Bible and attend Jewish religious services, but Christians were permitted to have a copy of the Christian Bible and attend Christian services, and Muslims to have copies of Islamic literature. (ECF No. 30, PageID.206; ECF No. 37, PageID.406.)

19. Finally, Plaintiff claims that he did not receive one particular piece of legal mail, *i.e.*, a scheduling order, from the Court in *In re Contempt of Saginaw County*, No. 21-cv-11610. (ECF No. 1, PageID.18, ¶¶ 100-102; ECF No. 30, PageID.206; ECF No. 37, PageID.406.)

### C.    Standard

#### 1.    Rule 12

When deciding a motion to dismiss under this Fed. R. Civ. P. 12, the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[1]

    **2.**    **Rule 56**

        **a.**    **Deadlines in this case**

Per the Court's Initial Scheduling Order, Defendants were required to bring

any arguments related to failure to exhaust at the same time as any motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 18, PageID.51.)

Thus, although titled a motion to dismiss, Defendants also argue that Plaintiff

failed to exhaust the prison grievance procedure, which necessarily relies on

matters outside the pleadings. (ECF No. 30, PageID.208.) In support of their

motion, Defendants cite primarily to documents of public record, but also state that

if the Court converts the motion to one under Rule 56, and if that motion survives,

they request permission to file a second summary judgment motion later in the

litigation (ECF No. 30, PageID.208); however, <u>the request is unnecessary</u>, as the

Undersigned's scheduling order (used in most prison litigation cases) already

clearly provides a separate deadline for "Rule 56 Motions *other than for failure to*

---

[1] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

*exhaust*." (ECF No. 18, PageID.51 (emphasis added).)[2] Thus, Plaintiff was

properly on notice that exhaustion was an issue in this motion, and that the Court

may convert the motion to one under Rule 56.

### b.    Failure to exhaust and PLRA cases

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq*.,

a prisoner may not bring an action "with respect to prison conditions under section

1983 of this title, or any other Federal law . . . until such administrative remedies

as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the

provision to address the "outsized share" of prisoner litigation filings and to ensure

that "the flood of nonmeritorious claims does not submerge and effectively

preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199,

203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the

quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S.

516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to

correct its own mistakes with respect to the programs it administers before it is

haled into federal court, and it discourages disregard of [the agency's] procedures."

---

[2] Since that second deadline passed while the instant motion was under
advisement, should this report and recommendation be rejected, the second Rule
56 motion deadline (addressing the case on the merits) will be extended, upon a
reasonably timely request.

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. As such, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

"Once an affirmative defense is asserted, it may be adjudicated at any point in the development of a lawsuit that the rules of procedure allow. As the *Jones* Court noted, because a plaintiff need not anticipate or plead around an exhaustion defense, that defense usually may not be addressed in a motion under Rule 12(b)(6) for failure to state a claim." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786 (E.D. Mich. 2016) (Lawson, J., adopting in part report and recommendation of Whalen, M.J.) (citing *Jones*, 549 U.S. at 215). To the extent the record permits, the Court addresses whether a prisoner has exhausted administrative remedies under Federal Rule of Civil Procedure 56. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc); *see also Melton v. Michigan Corr. Comm'n,* No. 07–15480, 2009 WL 722688, at *6 (E.D. Mich. Mar. 17, 2009) (resolving failure to exhaust administrative remedies in a motion for summary judgment). "The

summary judgment motion is especially well suited to pretrial adjudication of an

exhaustion defense, because proof of lack of exhaustion generally requires resort to

matters outside the pleadings, such as affidavits or documentary evidence."

*Anderson*, 175 F. Supp. 3d at 787.

### c.    Summary judgment standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.

Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment."  *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

**D.    Discussion**

The Saginaw County Jail has initiated a two-step grievance process, set forth in the Inmate Guide:[3]

---

[3] To establish that Plaintiff did not exhaust the grievance process, Defendants rely on documents filed in an earlier, related cases, in which Plaintiff had raised similar complaints regarding his kosher meals before Judge Edmunds.  *See In re Contempt of Saginaw County,* No. 21-11610.  The kosher meals issue was tangential to those before the Court, and thus Judge Edmunds did not decide them.  Nonetheless, Defendants cite to documents submitted in that case, which are now part of the public record.  The documents filed in the previous case were filed one year before the instant motion, but refer to matters that occurred in the relevant time frame referenced in Plaintiff's complaint in this case.  Although Defendants attach a copy of the previous case docket, they did not re-submit the documents.  The Court can certainly reference materials found on the public docket, and Plaintiff could also access them as public records (and also as a former litigant in that case), but it would have been far less cumbersome had Defendants simply resubmitted them in this case.

## <u>INMATE COMPLAINTS AND GRIEVANCES:</u>

A. Step 1: A Corrections Officer must be the first person contacted with the complaint/grievance and will attempt to resolve all complaints or grievances from an inmate.

    1. If the complaint/grievance cannot be resolved to the satisfaction of the inmate the inmate has 5 days from the date of initial complaint to request the grievance and proceed to step 2.

    2. A grievance will be immediately rejected if it contains any of the following:

        a) Profanity
        b) Threats of physical harm
        c) Language which demeans race, creed, color, national origin, ethnicity, physical appearance, gender or religion of any person unless the language is part of the description of grieved behavior and is essential to that description.
        d) Illegible or unintelligible writings
        e) Multiple submissions will be rejected.

B. Step 2: If the complaint has not been resolved in step 1, the inmate will be advised to put the complaint in writing and forward it to the Jail Administrator via the kiosks. The Jail Administrator will investigate the grievance to determine if the grievance is valid. If the grievance is not valid the inmate will be notified in writing that the grievance has been dismissed. If the grievance is valid, the Jail Administrator will investigate the complaint and issue his/her findings to the inmate within 5 business days of receiving the grievance.

    1. The complaint must state the reason for your grievance, the original Officer contacted in regard to the grievance, date, time, and why the problem was not or could not be resolved.
    2. This is the final step in the grievance process.

(2:21-CV-11610, ECF No. 28-2, PageID.263.)

Defendants assert that Plaintiff did not exhaust his grievances with respect to *any* of his claims, and Plaintiff provides no evidence that he did.  In his response, Plaintiff states that he was not required to plead exhaustion (ECF No. 37, PageID.407) which, while true, does not absolve him of his responsibility to respond to Defendants' argument once raised.  While Plaintiff claims that any discussion of exhaustion is "in my view … probably academic" (ECF No. 37, PageID.407), the Court should disagree.  Plaintiff fails to point to any evidence, or even make any argument, that he exhausted his grievances.  At most, Plaintiff merely argues that "Defendants . . . admit that I filed grievances regarding the defendants wrongfully removing me from receiving Kosher meals . . . But they falsely state that I terminated the Grievance process."  (ECF No. 37, PageID.407.) Plaintiff contends that these are "factual matters to be decided by a jury," but provides no admissible evidence on which a jury could find that he had exhausted his grievances.  Indeed, Plaintiff argues that Defendant Kerns has previously "denied the existence of any entity known as the Saginaw County Jail," and that it "follows that if there is no Saginaw County Jail, then any Grievance Policy associated with such non existent [sic] entity has no relevancy here."  (ECF No. 37, PageID.407.)  But this conflates the question of whether the SJC is a legal entity, capable of being sued as such, with the existence of a *place*.  Thus, it appears that Plaintiff is arguing that the exhaustion issue is either not relevant or "probably

academic," but that if it is relevant, it is a jury issue.  What Plaintiff does not argue, or provide any support for whatsoever, is that he followed the grievance procedure to its completion.  A general denial, without evidentiary support that Defendants "falsely state" that he terminated the grievance procedure is simply not enough to overcome his burden.  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

### 1.  Bible and religious services

In Defendants' motion for summary judgment, they asserted that "Plaintiff did not file a grievance pertaining to his claims that he was not provided a Jewish Bible or access to Jewish religious services."  (ECF No. 30, PageID.211.)  In summary judgment motions, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v.*

*Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).  In light of Defendants'

argument that Plaintiff never filed a grievance regarding religious materials or

services, it was Plaintiff's duty to "come forward with 'specific facts showing that

there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587

(emphasis removed) (quoting Fed. R. Civ. P. 56(e)).

### 2.  Kosher meals

Moreover, in contrast to Plaintiff's argument that he *filed* grievances

regarding kosher meals (ECF No. 37, PageID.406-407), Defendants have pointed

to evidence that Plaintiff did not *fully exhaust* his grievances relating to kosher

meals.  Defendants point to Defendant Kerns's affidavit filed in *In re Contempt of*

*Saginaw County*, No. 21-cv-11610 (ECF No. 28-2).  In that affidavit, Kerns avers

that Plaintiff has filed multiple grievances related to his kosher meals, which were

attached as Exhibit 5 to Kerns' affidavit.  (2:21-cv-11610, ECF No. 28-2,

PageID.206.)  On August 31, 2020, Plaintiff filed a grievance that he had requested

kosher meals but had not received a reply.  (2:21-cv-11610, ECF No. 28-2,

PageID.234.)  On September 3, 2020, he filed another grievance, complaining that

his meals were not kosher.  (2:21-cv-11610, ECF No. 28-2, PageID.235.)  On

December 2, 2020, he filed another grievance, stating this his kosher meals have

included items he suspected were not kosher.  (2:21-cv-11610, ECF No. 28-2,

PageID.236.)  On December 4, 2020, he filed a grievance asking how his

vegetables were prepared, and stating that his morning meal did not contain any

protein.  (2:21-cv-11610, ECF No. 28-2, PageID.237.)   On December 9, 2020,

Plaintiff filed another grievance stating:

> Your grievance rejection is rejected as I followed the format in the inmate
> guide.  I no longer expect you to do much re the continued foul ups re my
> kosher meals.  At this point I'm focused on documenting the continuous
> disregard for my religious rights.  At trial, your kitchen staff can test their
> knowledge of kashrut law with my rabbi.

(2:21-cv-11610, ECF No. 28-2, PageID.238.)

Kerns avers in his affidavit that due to the multiple grievances, he conducted

a video review between November 15, 2020 and December 16, 2020 of Plaintiff

receiving his kosher meals, observed many incidences of Plaintiff eating food from

another inmate's non-kosher tray and trading kosher food for non-kosher food.

(2:21-cv-11610, ECF No. 28-2, PageID.206-207.)  Kerns interviewed Plaintiff on

December 17, 2020, and offered to show Plaintiff videos of the violations, but

Plaintiff declined to watch the videos.  (2:21-cv-11610, ECF No. 28-2,

PageID.207.)  Kerns claims Plaintiff then admitted to eating food from other

inmate's non-kosher trays, and order soups from the commissary that Plaintiff

claimed he did not know were non-kosher (despite Kerns averring that the soups

are clearly marked as kosher or not kosher).  (*Id.*)  The affidavit also details that

Plaintiff's actions violated Inmate Rules regarding religious meals.  (2:21-cv-

11610, ECF No. 28-2, PageID.207-08.)    Kerns avers that during the interview

Plaintiff agreed that a fair discipline for the rule violations was to revoke his kosher meals and "not follow up any further into his grievances regarding alleged kosher meal violations."  (2:21-cv-11610, ECF No. 28-2, PageID.208.)

Each of the grievance forms submitted by Defendants shows that Plaintiff did not pursue the grievance beyond the initial filing.  In fact, the last grievance submitted by Plaintiff states that he is "focused on documenting the continuous disregard for [his] religious rights."  (2:21-cv-11610, ECF No. 28-2, PageID.238.) There is no evidence before the Court that Plaintiff appealed a single grievance to Step 2.  Instead, Defendants have submitted evidence that Plaintiff in fact voluntarily abandoned the grievances, or, as quoted above, expressed contempt for the grievance process itself.  (2:21-cv-11610, ECF No. 28-2, PageID.208, 238.)

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper* exhaustion.  *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file

a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement).

Defendants have met their initial burden of identifying evidence that Plaintiff did not properly exhaust his grievances before initiating this action. And Plaintiff has not produced any evidence to the contrary. *See Wrench LLC*, 256 F.3d at 453 ("Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'") (citation omitted). As such, the Court should grant Defendants' motion to dismiss on this basis, without reaching the merits of Defendants alternative arguments.[4]

---

[4] The gravamen of Plaintiff's complaint is that, in violation of various constitutional rights, he did not receive kosher meals, religious materials, or services, and most if not all of his claims are thus encompassed by Defendants' exhaustion arguments detailed above. The only Count that is arguably outside the scope of Defendants' exhaustion argument is Count 8, which alleges that Plaintiff was denied access to the courts based on his allegation that he did not receive the Court's scheduling order in the prior case. While the Court notes that there is no evidence of Plaintiff exhausting his grievances regarding this issue, even if he had, the count is nonetheless subject to dismissal because Plaintiff's complaint fails to articulate how the named Defendants were responsible for his not receiving the Court's scheduling order. The Sixth Circuit "has consistently held that damage claims . . . arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted). Plaintiff's complaint fails to allege Defendants personal involvement in the alleged violation. Moreover, the law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874. As Plaintiff's complaint does not

**D.      Conclusion**

For the reasons set forth in greater detail above, the Court should **GRANT**

Defendants' motion to dismiss (ECF No. 30) and dismiss the case for lack of

exhaustion.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to

file specific objections constitutes a waiver of any further right of appeal. *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

---

contain sufficient allegations to tie Defendants to the purported violation, Count 8
is subject to dismissal even if the Court were to find that Defendants had not
adequately shown that Count 8 was not exhausted.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  October 9, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE