UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REUBEN RANKE,

             Plaintiff,

v.

WILLIAM FEDERSPIEL, et al.,

             Defendants.

_____/

Case No. 2:23-cv-11300
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART, DENY IN PART DEFENDANTS' RENEWED MOTION TO DISMISS (ECF NO. 57)

I.    **RECOMMENDATION**: For the reasons stated below, the Court should

**GRANT IN PART AND DENY IN PART** Defendants' renewed motion to

dismiss. (ECF No. 57.)  Specifically, the Court should **GRANT** the motion and

dismiss Defendant Chaplain Andy Doe and any claims made under RLUIPA.  It

should be **DENIED** in all other respects.

II.    **REPORT:**

A.    **Introduction**

Plaintiff Reuben Ranke, a state prisoner, initiated this action on May 31,

2023, against various Saginaw County employees, officials and/or agents,

including: Sherriff William Federspiel, Jail Administrator David Kerns, Circuit

Court Chief Judge Darnell Jackson, and Jail Chaplain Andy "Doe." (ECF No. 1.) Plaintiff brings religious discrimination and related retaliation and policy claims in connection with allegedly being deprived of kosher meals at the Saginaw County Jail ("SCJ") while he was a pretrial detainee. (ECF No. 1.) He asserts five claims: (1) Count 1, alleging his kosher meals were "wrongfully removed" from him and he was instead given non-kosher meals, in violation of the First and Fourteenth Amendments; (2) Count 2, alleging Defendants violated his First Amendment rights when they retaliated against him for filing grievances by removing his non-kosher meals; (3) Count 3, alleging that Defendants' failure to reinstate his kosher meals was another violation of his First and Fourteenth Amendment rights; (4) Count 4, alleging Defendants again violated the First and Fourteenth Amendment by failing to provide Passover meals; (5) Count 5, alleging "continuing retaliation" of the First Amendment by failing to provide kosher meals for Passover; (6) Count 6, alleging a lack of policy to provide religious food at SCJ; (7) Count 7, alleging disparate treatment under the Fourteenth Amendment; and, (8) Count 8, alleging interference with the courts based on Plaintiff not receiving a scheduling order in Case No. 21-11610, while he was at SCJ.

On December 6, 2023, Judge Nancy G. Edmunds referred this case to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and

recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)."
(ECF No. 14.)  Earlier in this case, I issued a report and recommendation,
recommending that the Court dismiss the judicial defendant, Darnell Jackson, on
the basis of immunity.  (ECF No. 22.)  Plaintiff objected (ECF No. 33), but the
Court overruled the objections and adopted my report and recommendation (ECF
No. 36).

On March 22, 2024, Defendants filed a motion to dismiss, making various
arguments why Plaintiff's complaint should be dismissed.  (ECF No. 30.)  On
October 9, 2025, I issued a report and recommendation to grant the motion and
dismiss the complaint for failure to exhaust.  (ECF No. 50.)  Plaintiff filed
objections, which the Court overruled in part and sustained in part, adopting in part
and granting in part my recommendation.  (ECF No. 54.)  Specifically, the Court
found there to be a genuine issue of fact as to whether jail officials failed to timely
respond to Plaintiff's grievances, and thus Plaintiff "may have satisfied the
exhaustion requirement with regard to his claims alleging the deprivation of kosher
meals." (ECF No. 54, PageID.592.)  Judge Edmunds agreed that any remaining
claims (any not involving the deprivation of kosher meals) were not exhausted and
therefore adopted my recommendation to dismiss those claims.  (ECF No. 54,
PageID.592.)  Having found an issue of fact with regard to exhaustion on
Plaintiff's kosher meals claims, the Court also allowed Defendants an opportunity

to file another motion to dismiss to attack the merits of those claims.  (ECF No. 54, PageID.593.)

## B.    Background

Plaintiff Reuben Ranke was incarcerated in SCJ from August 24, 2020 to April 22, 2021. (ECF No. 1, PageID.6.)  Plaintiff is currently in the Federal Bureau of Prisons. (*Id*., PageID.2.) Plaintiff claims that while he was incarcerated in SCJ, he was improperly denied religious materials/services and kosher meals. (ECF No. 1, PageID.8-18.)

Plaintiff states in his complaint that shortly after his arrival at the Jail, he requested and began receiving kosher meals. (ECF No. 1, PageID.8.)  Plaintiff claims there were several times he received improperly served food, non-kosher food, or was missing protein or other nutrients, in particular noting the switch from carrots to iceberg lettuce, which "has very little nutritional value." (ECF No. 1, PageID.8-9.)  Plaintiff also states that he "was never advised or notified, verbally or in writing[,] what the relevant policies, procedures, rules, or regulations were regarding kosher meals."  (ECF No. 1, PageID.8.)

Plaintiff alleges that on December 17, 2020, Defendant Kerns called him into a meeting and informed Plaintiff that he discovered that Plaintiff was violating

the rules regarding religious meals.[1]  (ECF No. 1, PageID.9.)  Plaintiff contends that, prior to December 17, 2020, he had "never received a caution, warning[,] or any other notice, verbally or in writing, that he might be violating Religious Food rules or regulations."  (*Id.*)  Defendant Kerns informed Plaintiff that his kosher meals were being terminated for Plaintiff's alleged violations.  (ECF No. 1, PageID.10.)  Plaintiff contends that the SCJ "did not have any rules, regulations, or policies related to inmates and religious meals."[2]  (*Id.*)

According to the complaint, Defendant Kerns asserted that Plaintiff had been purchasing non-kosher soups from the commissary, which Kerns stated violated the religious meals rules, but Plaintiff also alleges that at the time, "there was no indication as to which items in the commissary were non-kosher."  (*Id.*)  Defendant Kerns told Plaintiff that he had been observed eating non-kosher food from another inmate and that Plaintiff had given some of his kosher food to other inmates.  (*Id.*)  Plaintiff alleges there were no rules preventing an inmate who was receiving a

---

[1] Defendants assert in their motion to dismiss that "Kerns advised him that, while investigating Plaintiff's grievances, he discovered Plaintiff violated rules regarding lying to staff about his necessity for kosher meals (Inmate Guide II.A.20) and misusing jail property (Inmate Guide II.A.36) by trading away his expensive kosher meals . . . and eating non-kosher foods . . ."  (ECF No. 57, PageID.615.)

[2] In response to the prior motion to dismiss, Plaintiff admitted that the Inmate Guide was available to him, but claims "that the Guide did not have any policies or procedures regarding religious meals." (ECF No. 37, PageID.405.)

religious meal from giving all or part of that meal to another inmate, and that there were no rules prohibiting a person who was receiving a religious meal from receiving a food item from another inmate. (*Id.*)

Plaintiff alleges in his complaint that he filed multiple grievances to ensure that his kosher meals included proper amounts of nutrition, but that instead of correcting the alleged nutritional deficiencies, Defendant Kerns instead terminated Plaintiff's kosher meals in retaliation for the filing of his grievances. (ECF No. 1, PageID.11.)  Plaintiff further alleges that he requested reinstatement of his kosher meals, and neither Kerns nor Defendant Federspiel granted his requests for reinstatement of the kosher meals. (ECF No. 1, PageID.11-12.)  According to Plaintiff, Kerns stated that Plaintiff would never receive kosher meals again.  (ECF No. 1, PageID.12.)  Plaintiff contends that he again requested kosher meals for Passover in 2021, but that Kerns denied his request in retaliation for his grievances. (ECF No. 1, PageID.13-14.)

Plaintiff further alleges that the Sheriff's Department has no policy protecting inmates' rights to religious foods. (ECF No. 1, PageID.15.)

Plaintiff's complaint also asserted two additional claims that have now been dismissed.  He asserted a claim that he was denied access to the courts.  (ECF No. 1, PageID.18.)  And he asserted another claim that he was not allowed to have a copy of the Jewish Bible and attend Jewish religious services, but Christians were

permitted to have a copy of the Christian Bible and attend Christian services, and Muslims were allowed to have copies of Islamic literature. (ECF No. 1, PageID.17-18.)  Both of these claims have been dismissed for failure to exhaust.

### C.   Standard

When deciding a motion to dismiss under this Fed. R. Civ. P. 12, the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

### D.   Discussion

#### 1.   Defendant Chaplain Andy Doe

Defendants first argue that Defendant Andy Doe, the Chaplain at SCJ, should be dismissed.  Plaintiff offers no opposition to this argument.  Indeed, the only claim asserted against Defendant Doe was Count 7, Plaintiff's Disparate Treatment claim based on the alleged failure to provide him with a Jewish bible and a DVD of Jewish services.  (ECF No. 1, PageID.17.)  This claim has been dismissed for failure to exhaust.  (ECF Nos. 50, 54.)   As there is no remaining claim in this action asserted against Defendant Doe, the Court should **GRANT** Defendants' motion and dismiss Defendant Doe.

8

## 2.      Plaintiff's First and Fourteenth Amendment Claims

Defendants argue that Plaintiff has failed to state a claim under the First or

Fourteenth Amendments for claims related to kosher meals.  (ECF No. 57,

PageID.621.)  The Court should disagree and deny Defendants' motion on this

claim.

An inmate's claim that his right to free exercise of religious has been

violated is analyzed under the framework set forth in *Turner v. Safley*, 482 U.S. 78

(1987).  Under *Turner*, prison regulations that impinge on an inmate's

constitutional rights are valid if they are "reasonably related to legitimate

penological interests."  *Id.*   *Turner*'s standard is deferential and applied in light of

the "inordinately difficult undertaking" of prison administration, which "requires

expertise, planning, and the commitment of resources, all of which are peculiarly

within the province of the legislative and executive branches of government."  *Id.*

at 85.

> The *Turner* Court outlined four factors that are relevant in determining the
> reasonableness of a challenged prison regulation. "First, there must be a
> valid, rational connection between the prison regulation and the legitimate
> governmental interest put forward to justify it." *Ibid*. If not, the regulation is
> unconstitutional, and the other factors do not matter. *Id*. at 89–90, 107 S.Ct.
> 2254. Unlike the first factor, the remaining factors are considerations that
> must be balanced together: (2) "whether there are alternative means of
> exercising the right that remain open to prison inmates"; (3) "the impact that
> accommodation of the asserted constitutional right will have on guards and
> other inmates, and on the allocation of prison resources generally"; and (4)
> whether there are "ready alternatives" available "that fully accommodate the

prisoner's rights at de minimis cost to valid penological interests." *Id*. at 90–91, 107 S.Ct. 2254.

*Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999). "[A] trial court is not required to weigh evenly, or even consider explicitly, each of the four Turner factors." *Id.* (*citing Scott v. Mississippi Department of Corrections*, 961 F.2d 77, 80 (5th Cir.1992); *Nobles v. Hoffman*, No. 92–2692, 1 F.3d 1244, 1993 WL 299333 at *2 (7th Cir.1993); *Casey v. Lewis*, 4 F.3d 1516, 1522 (9th Cir. 1993)).

The Sixth Circuit has also held that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). "If the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id.*

Defendants argue that Plaintiff's "admitted" violation of jail rules, his "lying" to prison officials about his religious requirements, and his "misuse" of jail property by creating a "false narrative" that he could only consume kosher foods (while trading food and consuming non-kosher foods with other inmates) preclude his claim under the First and Fourteenth Amendments. (ECF No. 57.) The central problem with Defendants' argument, however, is that it relies on *Defendants'* version of the facts, rather than the facts as pleaded in Plaintiff's complaint and *as disputed* by Plaintiff. Contrary to Defendants' argument, Plaintiff's complaint does not "tacitly confirm" Defendants' version of the facts. (*See* ECF No. 57,

PageID.624.)  Instead, Plaintiff states in his complaint only that he was accused of breaking the rules, not that he actually broke the rules.  Indeed, Plaintiff pleads that the SCJ did not have any rules related to religious meals, that there was no indication in the commissary as to which food was kosher, and that he was aware of no rules that prevented an inmate from giving part of his religious meal to another inmate.  (ECF No. 1, PageID.10.)  And the complaint never admits that Plaintiff lied to Defendants, or accepted Defendant Kern's accusations as true.  The complaint details the accusations made against Plaintiff, but does "tacitly confirm" Defendants' version.  Defendants' premise mischaracterizes the pleadings.

Defendants rely heavily on *Berryman v. Granholm*, 343 F. App'x 1 (6th Cir. 2009).  In *Berryman*, the Sixth Circuit upheld a grant of summary judgment to the defendants, finding that under the facts *as admitted by the plaintiff*, the defendants were entitled to judgment as a matter of law.  In *Berryman*, the plaintiff had been approved to eat from a kosher menu for religious purposes, but that approval was revoked when the defendants determined he had been purchasing non-kosher foods at the prison store.  *Berryman*, 343 F. App'x at 3.  The defendants in *Berryman* initially relied upon a Michigan Department of Corrections policy that "[a] prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion."  *Id.* at 1. The plaintiff in that case admitted at his

11

administrative hearing that he had purchased non-kosher foods, but asserted that he had purchased them to give to another prisoner and he argued that the policy did not forbid him from merely ordering non-kosher food items. *Id.* at 2.  Defendants ultimately revoked the plaintiff's religious meals approval, not only because he ordered and possessed the non-kosher food but also because he violated prison rules that prohibited him from giving any personal property to another inmate.  *Id.* After exhausting his prison grievances, the plaintiff sought relief in federal court. On appeal, the Sixth Circuit held:

> We conclude that Berryman's removal from the Kosher meal program passes muster under the deferential Turner standard. Berryman himself conceded that he had ordered and signed for the non-kosher food and that he had held it in his lap. Even accepting Berryman's contention that he had ordered the food for a non-Jewish inmate and his argument that he was fulfilling, rather than violating, his religious beliefs, the defendants' determination that he had violated the prison rules was not unreasonable. Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison. *See Russell v. Wilkinson*, 79 Fed.Appx. 175, 177 (6th Cir.2003) (concluding that, in light of a prisoner's "obvious actions in not observing the kosher food requirements outside meals," the prison had a legitimate penological interest in removing the prisoner from the program because of the need to maintain discipline in the facility).

*Berryman*, 343 F. App'x at 6.

 *Berryman* differs from this case in many important respects.  First, and most fundamentally, *Berryman* was determined *on summary judgment*, after discovery, *and on undisputed facts*.  The instant motion is presented under Rule 12(b)(6), and

therefore based on the facts pleaded in the complaint.  I decline Defendants'
invitation to consider factual documents submitted in a companion case.  (*See*, e.g.,
ECF No. 57, PageID.624, citing Case Number 21-11610.)[3]

Despite Defendants' attempts to suggest Plaintiff admits to their version of
the facts, Plaintiff vehemently denies that he lied or that he broke any known
prison rules.  Indeed, it is a central theme of Plaintiff's complaint that there *were*
no rules related to religious meals.  Defendants also suggest that Plaintiff's "tacit
confirmation" (ECF No. 57, PageID.624) or failure to directly contradict
Defendants' version (ECF No. 59, PageID.665) should be construed to mean he
does not dispute Defendants' facts.  Defendants argue that Plaintiff "does not plead
that these accusations were incorrect (because he knows he cannot)" (ECF No. 59,
PageID.665), but neither does Plaintiff plead that the accusations are *correct*.  And
on review under Rule 12(b)(6), the Court must "construe the complaint in the light
most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana,
Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

---

[3] Even if the Court *were* to consider the affidavits filed in the companion case, and
convert this motion to a Rule 56 motion, the facts were disputed in that case, as
this Court in the instant matter has already found.  (ECF No. 54, PageID.592.)
Plaintiff's affidavit in the companion case largely tracks his complaint in this case,
which disputes Defendants' version of the facts, so it's quite perplexing why
Defendants believe they get any mileage out of it here.

In the case at bar, Plaintiff presents a version of facts, as pleaded and
through reasonable implication, that Defendants failed to provide him with kosher
meals that were nutritionally adequate, that food sold in the commissary was not
sufficiently labeled, that he was provided no rules regarding religious meals, that
kosher meals were required for his religious beliefs, and that, after he complained
about the nutritional value of the kosher meals, he was given no warnings before
his kosher meals were withheld from him, permanently, for an alleged failure to
abide by rules he had never received.  This version of facts does not fit within any
of the cases Defendants cite to argue that the prison regulations alleged
impingement on Plaintiff's rights were "reasonably related to legitimate
penological interests" and therefore valid.  *Turner*, 482 U.S. at 89 ("First, there
must be a valid, rational connection between the prison regulation and the
legitimate governmental interest put forward to justify it.").  Given that Plaintiff
asserts that there was *no* prison regulation whatsoever, let alone a *valid* one, the
Court's inquiry can stop with the first *Turner* factor.[4]

_____

[4] Defendants argue in their reply that jail policies need not be written, but that
Plaintiff's kosher meals could be validly revoked based on unwritten policies.
(ECF No. 59, PageID.664).  First, Plaintiff has alleged he never received notice of
any policies whatsoever, "verbally or in writing."  (ECF No. 1, PageID.8.)
Moreover, a fair reading of the complaint is that Plaintiff alleges his kosher meals
were discontinued in retaliation for his filing of grievances regarding the
substandard nutritional value of his kosher meals, not because of any violation of
jail policy. And, to the extent Defendants rely on the jail regulations against lying

14

For these reasons, the Court should find that Defendants' motion to dismiss should be denied with respect to Plaintiff's First and Fourteenth Amendment Claims.

### 3.    First Amendment Retaliation Claim

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In their motion to dismiss, Defendants argue that Plaintiff "admits that Kerns met with and notified him that his participation in the kosher meal program was being terminated because Plaintiff was not maintaining a kosher diet and was eating non-kosher food from other inmates' non-kosher trays." (ECF No. 57, PageID.626.)  This is true.  Plaintiff admits that Kerns met with him and informed him that his kosher meals were being terminated due to alleged violations of rules (of which Plaintiff insists he was never advised).  (ECF No. 1, PageID.9.)  However, Defendants push beyond the boundaries of this pleading and further

---

and misuse of jail property, that argument is better made to the trier of fact, because Plaintiff disputes that he lied or misused jail property.

argue, "Specifically, he admits that his request for kosher meals was discontinued *because he lied* about his need for them and had been ordering nonkosher soups from the commissary, eating non-kosher foods from other inmates' trays, and giving his kosher food items to other inmates." (ECF No. 57, PageID.626.) This is *not* true. Plaintiff admits none of this. Plaintiff does not admit he lied about his need for kosher meals; he does not specifically admit he had been ordering non-kosher soups (and he *does* specifically allege that foods in the commissary were not labeled as kosher or non-kosher); he does not admit to eating non-kosher food from other inmates' trays; he does not admit to giving his kosher food items to other inmates. Instead, he alleges that "[a]t that time there were no rules" "against" or "preventing" an inmate from giving "some of his kosher food to other inmates" or "to another" and that he had never been "cautioned, notified, warned, etc. . [.] that he might be breaking any of the religious food rules." (ECF No. 1, PageID.10, ¶¶ 39-41). These allegations do not actually admit breaking the rules, and, contrary to Defendants' suggestion, support the opposite of a lie; rather, the allegations suggest that if he did, in fact, give food to other inmates, he would *not* have lied about it because he'd never been told that it was prohibited. As with Defendants' argument under the First and Fourteenth Amendment claims, Defendants' argument to dismiss Plaintiff's retaliation claims is based wholly on Defendants' versions of the facts, rather than the facts as pleaded in Plaintiff's

complaint.  Defendants are well aware of the standards that apply to Rule 12

motions to dismiss, are well aware of what the record does and does not support,

and presumably are well aware of the duty of candor prescribed by Fed. R. Civ. P.

11(b)(3), the Michigan Professional Rules of Conduct and the Oath of Admission

to the Michigan Bar.  Defendants' characterization of the record here was wishful

thinking, but it was not accurate.

Plaintiff's version of the facts, as alleged in the complaint, is that Plaintiff

filed multiple grievances regarding the nutritional adequacy of his kosher meals,

including five grievances between December 2 and December 17, 2020 (ECF No.

1, PageID.11), which led to Defendant Kerns to revoking Plaintiff's kosher meal

provisions on December 17, 2020.  Defendants argue that temporal proximity

alone is not enough to show causation.  True, the Sixth Circuit has noted that

evidence of temporal proximity *alone* "is not sufficient to meet [Plaintiff]'s burden

to show that the filing of grievances was a substantial or motivating factor for his

transfer."  *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); s*ee also Hill*,

630 F.3d at 476 ("Although this court has concluded that evidence of temporal

proximity between filing grievances and the adverse action provides some support

for establishing retaliatory motive, it has been reluctant to find that such evidence

alone establishes retaliatory motive.") (citing *Holzemer v. City of Memphis*, 621

F.3d 512, 526 (6th Cir. 2010)). *But see Holzemer*, 621 F.3d at 526 (citing *Vereecke*

*v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)) ("[I]n the

employment context, we summarized our case law on the weight given to temporal

proximity in First Amendment retaliation cases 'as recognizing the possibility that,

on a particular set of facts, extremely close temporal proximity could permit an

inference of retaliatory motive, but also recognizing that often evidence in addition

to temporal proximity is required to permit the inference.'").  Here, in the context

of a motion to dismiss and viewing the complaint and all reasonable inferences in a

light most favorable to Plaintiff, the Court should conclude that Plaintiff has

adequately pleaded causation.  Plaintiff alleges that the termination came

immediately on the heels of Plaintiff's grievances, that the alleged violations were

based on rules of which he had never been informed, and that Defendant Kerns

advised him he will never receive kosher meals again.  (ECF No. 1, PageID.10-

12.)  The Court should find this set of allegations sufficient to plead causation.

 Finally, the Court should also reject Defendants' argument that Plaintiff has

not adequately pleaded that he was engaged in any protected conduct.  Defendants

assert that "[l]ying to prison officials about religious necessities and filing false

grievances is not protected by the First Amendment."  (ECF No. 57, PageID.627.)

Plaintiff does not admit he was lying or that he filed a false grievance.  Plaintiff's

complaint alleges that he filed grievances to receive nutritionally adequate

religious meals based on a sincerely held religious belief.  That Defendants dispute

18

whether Plaintiff's religious beliefs are sincerely held is not a basis to grant their motion to dismiss.  The Complaint does not lend itself to the interpretation that Defendants urge upon the Court, and this is not a motion for summary judgment with an evidentiary record to support admitted or undisputed falsehoods about religious necessities or grievances; rather, this is a motion on the pleadings, in which the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys*, 684 F.3d at 608.  Defendants conflate the standards applicable to motions filed under Rule 12(b)(6) with those of Rule 56, but the Court will not.  And even if this were a motion for summary judgment under Rule 56, the Plaintiff's supposed admissions of lying remain elusive.  Defendants are reminded that any future motion under Rule 56 that claims entitlement to summary judgment due to a lack of undisputed material facts must deliver on that promise, not ignore or misconstrue unfavorable portions of the record.

The case should proceed to discovery on Plaintiff's First Amendment retaliation claim and the Court should deny Defendants' motion to dismiss on this issue.

### 4.   Official Capacity Claim Against Defendant Federspiel

Plaintiff asserts an official capacity claim against Federspiel for his alleged failure to ensure that SCJ had appropriate policies and procedures regarding religious food.  (ECF No. 1, PageID.15.) Defendants argue:

> Plaintiff's claim that the Jail's lack of adequate policy regarding religious meals fails because he has not suffered a constitutional violation as outlined above.  The Jail clearly has a kosher meal program which Plaintiff was participating in.  Kerns' removal of Plaintiff from the program for rules violations was reasonably related to legitimate penological interests. As such, it was constitutional. *Colvin*, 605 F.3d at 293; *Turner*, 482 U.S. at 89. "[W]here there has been no showing of individual constitutional violations…there can be no municipal liability."  *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019).

(ECF No. 57, PageID.628-29.)  Defendants argue that the prison had a policy that inmates are not to lie and Plaintiff lied about his religious diet. Thus, Defendants assert that Plaintiff has not stated a claim for a failure to maintain a religious policy because Plaintiff has not articulated a constitutional violation.  As with their other arguments, Defendants rely on their own version of the facts.  Plaintiff's complaint does not admit that he lied, and asserts that his kosher meal services was discontinued in retaliation for his grievances.  The Court expresses no opinion on whether the absence of a religious meal policy in and of itself is enough to succeed on a claim against Defendant Federspiel, and Defendants can raise this issue again, if applicable, at the summary judgment stage.  Notably, *Baker*, as relied upon by Defendants in support of this argument, was decided on a motion for summary judgment, not as a motion on the pleadings.  At this stage in the proceedings,

however, Defendants have based their motion to dismiss this claim wholly on their argument that Plaintiff's kosher meals were stopped due to his purported rules violations, and for the reasons discussed above, the allegations made in the complaint, and the reasonable inferences drawn therefrom, render that premise faulty. The Court will again refrain from shoe-horning an evidence-based summary judgment analysis into a motion on the pleadings. Defendants' motion should be **DENIED** as to this claim as well.

## 5. RLUIPA

In response to Defendants' motion to dismiss, Plaintiff relies on law related to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which is indeed referenced in the introduction as a basis for Plaintiff's claims in his complaint, *although not specifically listed under any of the counts*. (ECF No. 1, PageID.6.) In their reply brief, Defendants argue that Plaintiff has not pleaded a valid claim under RLUIPA. Although the Court typically should not address arguments first raised in the reply, the Court should nonetheless hold that no RLUIPA claim can proceed in this matter. Indeed, Defendants did not first move to dismiss any RLUIPA claim because there is no specific count dedicated to RLUIPA, and they had no way of knowing Plaintiff relied upon RLUIPA until the response brief. Thus, the argument addressed to RLUIPA is properly raised as a rebuttal argument in reply.

First, Plaintiff's complaint does not list RLUIPA under any of the counts in the complaint.  A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  Here, the complaint contains no "short and plain statement" of any claim under RLUIPA.  Indeed, "[t]he goal of the complaint is to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bommarito v. Equifax Information Serv's*, 340 F.R.D. 566 (E.D. Mich. 2022) *(quoting Bell Atlantic Corp. v. Twombl*y, 550 U.S. 544, 555 (2007)) (further internal citations omitted).  With no count specifying a RLUIPA claim, Defendants had insufficient notice that Plaintiff may be bringing an RLUIPA claim.

Secondly, even if Plaintiff's complaint did attempt to bring an RLUIPA claim, such claim would be barred.  The RLUIPA prohibits state and local governments from placing "a substantial burden" on the "religious exercise" of any inmate unless they establish that the burden furthers a "compelling governmental interest" and does so in the "least restrictive" way.  42 U.S.C. § 2000cc–1(a).  The statute permits the recovery of "appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  But RLUIPA does not permit claims for monetary damages against state or local government officials in their individual capacities.  *Haight v. Thompson*, 763 F.3d 554, 568-70 (6th Cir. 2014); *see also Owens v. Schuette,* No. 2:24-CV-10787, 2024 WL 4469086, at *8 (E.D. Mich. Oct. 10, 2024)

("Considering the foregoing, RLUIPA does not permit money damages claims against Defendants.") (Drain, J.); *Chaaban v. City of Detroit,* No. 20-cv-12709, 2021 WL 4060986 (E.D. Mich. Sept. 7, 2021) (Edmunds, J.).  As Plaintiff's complaint seeks only monetary damages, he cannot sustain an RLUIPA claim.

### D.    Conclusion[5]

For the reasons set forth in greater detail above, the Court should **GRANT IN PART AND DENY IN PART** Defendants' renewed motion to dismiss. (ECF No. 57.)  Specifically, the Court should **GRANT** the motion and dismiss Defendant Chaplain Andy Doe and any claims made under RLUIPA.  It should be **DENIED** in all other respects.

---

[5] Defendants' motion devotes two and a half pages to case law regarding qualified immunity, without making any targeted analysis as to why Defendants may be entitled to qualified immunity in this case.  (ECF No. 57, PageID.618-620.)  To the extent they raise qualified immunity, they seem to be intimating that because Plaintiff has not shown a constitutional violation, they are entitled to immunity.  As discussed above, however, the Court finds that Plaintiff's complaint adequately pleads constitutional violations sufficient to withstand a motion under Rule 12(b)(6).  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (citation and marks omitted)).  Thus, the Court should reject Defendants' half-hearted attempt at a qualified immunity argument.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  August 13, 2025

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE