**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

REUBEN RANKE,

        Plaintiff,

v.

WILLIAM FEDERSPIEL and
DAVID KERNS,

        Defendants.

Case No. 2:23-cv-11300
District Judge Linda V. Parker
Magistrate Judge Anthony P. Patti

_____ /

## OPINION AND ORDER DENYING PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND (ECF No. 94)

### A. Introduction

Plaintiff Reuben Ranke, a state prisoner, initiated this action on May 31, 2023, against various Saginaw County employees, officials and/or agents, including: Sherriff William Federspiel, Jail Administrator David Kerns, Circuit Court Chief Judge Darnell Jackson, and Jail Chaplain Andy "Doe." (ECF No. 1.) Plaintiff brings religious discrimination and related retaliation and policy claims in connection with allegedly being deprived of kosher meals at the Saginaw County Jail ("SCJ") while he was a pretrial detainee. (ECF No. 1.)

On December 6, 2023, Judge Nancy G. Edmunds referred this case to me "for all pretrial proceedings, including a hearing and determination of all

non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 14.)  Earlier in this case, I issued a report and recommendation, recommending that the Court dismiss the judicial defendant, Darnell Jackson, on the basis of immunity.  (ECF No. 22.)  Plaintiff objected (ECF No. 33), but the Court overruled the objections and adopted my report and recommendation (ECF No. 36).

### B. Background

Plaintiff Reuben Ranke was incarcerated in SCJ from August 24, 2020 to April 22, 2021. (ECF No. 1, PageID.6.) He is currently in the Federal Bureau of Prisons. (*Id*., PageID.2.) Plaintiff claims that while he was incarcerated in SCJ, he was improperly denied religious materials/services and kosher meals. (ECF No. 1, PageID.8-18.)

Plaintiff alleges in his complaint that shortly after his arrival at the Jail, he requested and began receiving kosher meals. (ECF No. 1, PageID.8.)  Plaintiff asserts that he "experienced many problems with the kosher meals he was served including: improperly served food; being served non-kosher food; and frequently missing food items." (ECF No. 1, PageID.8.)  He states that "[t]here were several mornings when [he] did not receive the required protein on his breakfast tray, either hard boiled eggs or peanut butter, including one period of 5 consecutive

2

days." (*Id.*)  According to Plaintiff, he filed several grievances regarding the "ongoing problems he was having with the kosher meals he was receiving." (*Id*.) Plaintiff states that he "was never advised or notified, verbally or in writing[,] what the relevant policies, procedures, rules, or regulations were regarding kosher meals." (ECF No. 1, PageID.8.)  Plaintiff contends that "[d]espite filing many [g]rievances regarding missing food items, Plaintiff never had those missing items replaced which deprived [him] of adequate nutrition." (ECF No. 1, PageID.9.)

The complaint alleges that when "Defendant Kerns could not confirm that the cooked vegetables being served to Plaintiff were kosher, raw carrots were substituted in a sealed pre-packed bag," and that the carrots turned rancid and were past the expiration date. (*Id*.)  Plaintiff complained again, and his vegetable was switched to iceberg lettuce which "has very little nutritional value." (*Id*.)

Plaintiff alleges that on December 17, 2020, Defendant Kerns called him into a meeting and informed Plaintiff that he discovered that Plaintiff was violating the rules regarding religious meals. (ECF No. 1, PageID.9.)  Plaintiff contends that, prior to December 17, 2020, he had "never received a caution, warning[,] or any other notice, verbally or in writing, that he might be violating Religious Food rules or regulations." (Id.)  Defendant Kerns informed Plaintiff that his kosher meals were being terminated for Plaintiff's alleged violations. (ECF No. 1, PageID.10.)  Plaintiff contends that the SCJ "did not have any rules, regulations, or

3

policies related to inmates and religious meals."[1] (*Id.*)

According to the complaint, Defendant Kerns asserted that Plaintiff had been purchasing non-kosher soups from the commissary, which Kerns stated violated the religious meals rules, but Plaintiff also alleges that at the time, "there was no indication as to which items in the commissary were non-kosher." (*Id.*) Defendant Kerns told Plaintiff that he had been observed eating non-kosher food from another inmate and that Plaintiff had given some of his kosher food to other inmates. (*Id.*) Plaintiff alleges there were no rules preventing an inmate who was receiving a religious meal from giving all or part of that meal to another inmate, and that there were no rules prohibiting a person who was receiving a religious meal from receiving a food item from another inmate.[2] (*Id.*)

Plaintiff alleges in his complaint that he filed multiple grievances to ensure that his kosher meals included proper amounts of nutrition, but that instead of correcting the alleged nutritional deficiencies, Defendant Kerns terminated

---

[1] In response to the March 22, 2024 motion to dismiss, Plaintiff admitted that the Inmate Guide was available to him, but claims "that the Guide did not have any policies or procedures regarding religious meals." (ECF No. 37, PageID.405.)

[2] Defendants asserted in their January 16, 2025 motion to dismiss that "Kerns advised him that, while investigating Plaintiff's grievances, he discovered Plaintiff violated rules regarding lying to staff about his necessity for kosher meals (Inmate Guide II.A.20) and misusing jail property (Inmate Guide II.A.36) by trading away his expensive kosher meals . . . and eating non-kosher foods . . ." (ECF No. 57, PageID.615.)

Plaintiff's kosher meals in retaliation for the filing of his grievances. (ECF No. 1, PageID.11.)  Plaintiff further alleges that he requested reinstatement of his kosher meals, and neither Kerns nor Defendant Federspiel granted his requests for reinstatement of the kosher meals. (ECF No. 1, PageID.11-12.)  According to Plaintiff, Kerns stated that Plaintiff would never receive kosher meals again. (ECF No. 1, PageID.12.)  Plaintiff contends that he again requested kosher meals for Passover in 2021, but that Kerns denied his request in retaliation for his grievances. (ECF No. 1, PageID.13-14.)  Plaintiff further alleges that the Sheriff's Department has no policy protecting inmates' rights to religious foods. (ECF No. 1, PageID.15.)

Plaintiff's complaint asserted five claims: (1) Count 1, alleging his kosher meals were "wrongfully removed" from him and he was instead given non-kosher meals, in violation of the First and Fourteenth Amendments; (2) Count 2, alleging Defendants violated his First Amendment rights when they retaliated against him for filing grievances by removing his kosher meals; (3) Count 3, alleging that Defendants' failure to reinstate his kosher meals was another violation of his First and Fourteenth Amendment rights; (4) Count 4, alleging Defendants again violated the First and Fourteenth Amendment by failing to provide Passover meals; (5) Count 5, alleging "continuing retaliation" of the First Amendment by failing to provide kosher meals for Passover; (6) Count 6, alleging a lack of policy to provide

religious food at SCJ; (7) Count 7, alleging disparate treatment under the Fourteenth Amendment for an alleged failure to provide him with a copy of the Jewish Bible and permitting him to attend Jewish religious services; and, (8) Count 8, alleging interference with the courts based on Plaintiff not receiving a scheduling order in Case No. 21-11610, while he was at SCJ.

On March 22, 2024, Defendants filed a motion to dismiss, making various arguments why Plaintiff's complaint should be dismissed.  (ECF No. 30.)  On October 9, 2025, I issued a report and recommendation to grant the motion and dismiss the complaint for failure to exhaust.  (ECF No. 50.)  Plaintiff filed objections, which the Court overruled in part and sustained in part, and adopting in part and granting in part my recommendation.  (ECF No. 54.)  Specifically, the Court found there to be a genuine issue of fact as to whether jail officials failed to timely respond to Plaintiff's grievances, and thus Plaintiff "may have satisfied the exhaustion requirement with regard to his claims alleging the deprivation of kosher meals."  (ECF No. 54, PageID.592.)  Judge Edmunds agreed that any remaining claims (any not involving the deprivation of kosher meals) were not exhausted and therefore adopted my recommendation to dismiss those claims.  (ECF No. 54, PageID.592.)  Having found an issue of fact with regard to exhaustion on Plaintiff's kosher meals claims, the Court also allowed Defendants an opportunity

to file another motion to dismiss to attack the merits of those claims.  (ECF No. 54, PageID.593.)

Plaintiff filed a motion for reconsideration of the Court's order, which was denied on January 16, 2025. (ECF Nos. 55, 56.)  The upshot of that motion practice included the dismissal of Counts 7 and 8 for failure to exhaust. (ECF No. 50 & 54.)

Defendants then filed a renewed motion to dismiss. (ECF No. 57.)  I issued a report and recommendation recommending that the Court grant the motion with respect to any claims against Defendant Chaplain Andy Doe and any claims made under RLUIPA. (ECF No. 61.)  The Court adopted my recommendation on September 3, 2025. (ECF No. 62.)  Among other outcomes, Defendants Jackson and Doe, and any claims allegedly arising under RLUIPA, have been dismissed. (ECF Nos. 17, 22, 36, 61, 62.)

I issued a Text-Only Order which set a discovery deadline of January 26, 2026, and a dispositive motion deadline of February 27, 2026. (10/28/2025 Text-Only Order.)  The case proceeded to discovery. Between January 9, 2026 and March 2, 2026, the parties collectively filed seven motions regarding discovery.[3]  I

---

[3] Defendants also timely filed a motion for summary judgment before expiration of the dispositive motion deadline.  (ECF No. 83.)  Recognizing that the discovery motions may impact the merits of Defendants' summary judgment motion, the Court suspended the dispositive motion deadline without date and allowed Defendants an opportunity to withdraw their motion without prejudice, which they

issued rulings on all seven motions and extended discovery for the limited purpose of taking Plaintiff's deposition and completing or supplementing a few outstanding requests.  (ECF Nos. 90, 91, 92, 93.)  On March 23, 2026, I specifically denied the request to extend discovery for any purpose other than otherwise noted and I extended the dispositive motion deadline until August 28, 2026.  (ECF No. 92.)  That order also stated:

> Importantly, none of Plaintiff's claims challenge the substance of the kosher meals he received. Although the background facts provided in the complaint detail Plaintiff's grievances regarding the nutritional value and quality of the kosher meals, his claims themselves attack only the removal of his kosher meals, the failure to reinstate them, and the lack of a policy regarding religious foods to guide Defendant Kerns in his actions.

(ECF No. 92, PageID.1435.)  In my order, I also held that Plaintiff was not entitled to any discovery related to the *quality* of the kosher meals, as the quality of the meals is "simply not an issue in this lawsuit."  (*Id.* at PageID.1441.)

Plaintiff now seeks leave to amend his complaint.  He asserts that he has "pared down the length of the Complaint and added a new alternative theory of recovery based on the latest discovery received by Plaintiff."  (ECF No. 94, PageID.1449.)  He seeks to add a claim of "'Failure To Provide Kosher Meals' as an alternative to 'Wrongful removal of Kosher Meals.'" (*Id.*)  He argues that the proposed amendment will "not cause Defendants any undue prejudice or undue

---

did on March 6, 2026.  (ECF No. 86; *see also* 02/27/2026 Text-Only Order & 03/01/2026 Text-Only Order.)

delay in the proceedings." (*Id.*)  His proposed amended complaint (which he calls his "Third Amended Complaint") appears at ECF No. 95 on the docket.

### C. Analysis

Plaintiff's motion to amend was filed April 6, 2026.  (ECF No. 94.)  No response is yet due, and the Court concludes a response is not necessary.  And since the Court does not require a response, neither will the Court wait for any reply, which is optional in any event.  The motion is without merit on its face and will be denied.

Under Fed. R. Civ. P. 15(a), a party may amend its pleadings at this stage of the proceedings only after obtaining leave of court.  The Rule provides that the court should freely give leave for a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'"  *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).  An amendment is futile if it could not withstand a motion to dismiss.  *Thikol Corp. v. Dept. of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

Rule 15(a) supports the "principle that cases should be tried on their merits" and not on technicalities, and thus "assumes 'a liberal policy of permitting

9

amendments.'" *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)).  In determining whether to grant the amendment, the Court considers the factors set forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962) – "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

In my initial scheduling order, I set a deadline of January 23, 2024 for any motions to amend the pleadings.  (ECF No. 18.)  Plaintiff's motion is filed over two years past that deadline, with no sufficient explanation given for the delay.

"Delay alone will ordinarily not justify the denial of leave to amend; however, delay will at some point become 'undue,' 'placing an unwarranted burden on the court,' or 'prejudicial,' 'placing an unfair burden on the opposing party.'" *Comm. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 347 (6th Cir. 2007) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). Here, the case has already been pending for almost three years, and the Court has already resolved two motions to dismiss. At this point, an amendment to the pleadings would place an unwarranted burden on the Court and would be prejudicial to Defendants.  Moreover, the Sixth Circuit has consistently held that motions to amend may be considered untimely and prejudicial in the absence of an

explanation for the lapse in time between the original complaint and the proposed amendment, where dispositive motions have either been filed or the deadline for filing them is fast approaching. *Gunnels v. Kenny*, 700 F. App'x 478, 484 (6th Cir. 2017) (citing *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 898-899 (6th Cir. 2006) and *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)). Finally, where, as here, Plaintiff seeks to amend the complaint after a deadline has passed in the scheduling order, he must allege and show "good cause" at a minimum, and perhaps even "excusable neglect." "[W]hether Rule 6's 'excusable neglect' standard or Rule 16's 'good cause' standard applies when a party files a motion after the scheduling order deadline . . . is a source of ambiguity" in the Sixth Circuit. *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 240–41 (E.D. Ky. 2018) (collecting cases). "In short, the relationship between Rule 16 and Rule 6 is muddled." *Id*. at 241. Whichever standard applies, however, Plaintiff has not met it.

Plaintiff states vaguely that the proposed alternative theory of recovery is "based on the latest discovery received by Plaintiff" (ECF No. 94, PageID.1449), but fails to specify what the discovery was and how precisely he only recently learned of anything new. Indeed, a review of the proposed amended pleading indicates that the "new alternative theory of recovery" (ECF No. 94, pageID.1449) is based on information that would have been known to Plaintiff prior to filing this

lawsuit.[4]  Under these circumstance, the Court finds neither "good cause" nor "excusable neglect" for his failure to meet the Scheduling Order deadline, but instead finds "undue delay" warranting a denial of his motion.

Moreover, while Plaintiff suggests that "the additional legal theory asserted in Plaintiff's proposed amendment would require very little additional discovery," (ECF No. 94, PageID.1452), the fact that the proposed amendment would require

---

[4] Plaintiff alleges that the kosher meals were served on the same trays as non-religious foods, and that he complained about this at the time he received them. (ECF No. 95, PageID.1457.)  He also takes issue with the packaging in which the food arrived, because the food did not come in a sealed container, was not double-sealed, or "did not contain a kosher certification on the packet." (ECF No. 95, PageID.1458.)  All of these alleged facts would have been known to Plaintiff before he filed the lawsuit and could have been included in his original complaint to support his proposed new claim for recovery.  To be sure, there are facts alleged which are not clear to the Court were known to Plaintiff prior to filing the complaint, but neither does Plaintiff explain in his motion or in the proposed amended pleading, when or how those facts came to light. For example, Plaintiff also asserts that "[t]he kitchen and food preparation areas at the Detention Center had not been inspected by any rabbinical authority trained in Kashrut," and that "the daily preparation of the kosher meals [was not] supervised by a rabbinical authority trained in Kashrut." (ECF No. 95, PageID.1458.)  While it is not clear that Plaintiff knew of this alleged fact before filing the lawsuit, he does not indicate in his motion when or how he came to know of this alleged fact and whether he timely moved to amend thereafter (or whether he pursued any grievances based on these "new" facts). Nonetheless, he need not know *every* fact before adding a claim for relief. As noted above, Plaintiff would have to show good cause or excusable neglect to amend at this late stage of the litigation. And here, Plaintiff cannot meet either standard because he has not shown he moved timely to add this claim for relief since most or key portions of the alleged facts were known to him prior to filing the lawsuit and he has not alleged how the remaining facts only recently came to light.

*any* discovery at this stage in the litigation constitutes an undue burden to Defendants. The Court has recently heard and resolved seven separate discovery motions, and a good portion of the motions were denied on the basis that Plaintiff was attempting to gather discovery on a theory of relief not asserted in his complaint, related to the quality of the kosher meals provided to him. The discovery would have required delving into the nutritional and food preparation practices of non-parties and would have significantly and unnecessarily expanded the scope of this litigation, based on the claims alleged in the pleadings. Plaintiff now seeks to amend the complaint to present the very theory on which the Court had previously denied him discovery. Based on the record before the Court, Plaintiff's late attempt to amend his complaint is not based on any new information, but based on his frustrated efforts at a fishing expedition which the Court shut down. Allowing Plaintiff to amend his Complaint now, at this late stage, would require reopening discovery, and potentially allowing another round of exhaustion motions as the Court has no idea if the proposed new claim was exhausted at the administrative level. Allowing the amendment would necessarily require expenditure of a great deal of additional resources, both by the parties as well as the Court.

Furthermore, even if Plaintiff had moved timely, the proposed amendment is likely futile. To establish a viable claim under 42 U.S.C. § 1983, a plaintiff must

13

establish that he or she was deprived of a right "'secured by the Constitution and the laws of the United States' by one acting under color of law." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978)).  Under §1983, "each defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).  The new proposed claim (Claim Two) does not identify how the particular Defendants sued in this action were responsible for any failure to provide kosher meals.  (ECF No. 95, PageID.1457-58.)  Unlike the other counts, which identify the alleged actions of Kerns and Federspiel, proposed Claim Two uses the passive voice to state that Plaintiff "was served" non-kosher foods, or that certain food was or was not kosher, without identifying who prepared or served the food.  He also states that the kitchen and food preparation areas "had not been inspected" by the proper rabbinical authority, and that "[none] of the food served to Plaintiff was kosher" but does not state how each defendant was responsible or involved in these alleged violations.  (ECF No. 95, PageID.1458.)  Indeed, at most, Plaintiff simply states "Defendants had deceived Plaintiff by calling the meals served to him kosher" but he again does not identify specific actions of each defendant.  Although "using collective references is not an impermissible pleading form *per se*[,]" *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1162 (S.D. Fla. 2019), on the issue of individual involvement, "it is insufficient to make

14

generic or blanket allegations pertaining to 'defendants' or allegations lumping together individual defendants[,]" and "mere citation to each individual defendant's job description—without an accompanying allegation showing how each defendant failed to comply with his or her job description—is insufficient." *Rouse v. Washington*, No. 20-CV-11409, 2021 WL 2434196, at *8 (E.D. Mich. June 15, 2021) (Goldsmith, J.).

The lack of any particularized facts mentioning each specific defendant means that Plaintiff's proposed Claim Two fails to state a claim upon which relief may be granted. *See Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002) ("Frazier's complaint contained no specific facts in support of his conclusory allegations that the defendants violated his constitutional and statutory rights. Moreover, Frazier failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights."); *see also Vartinelli v. Aramark Corr. Servs., LLC,* No. 18-CV-10964, 2019 WL 1402653, at *8 (E.D. Mich. Mar. 28, 2019), aff'd, 796 F. App'x 867 (6th Cir. 2019) ("Plaintiffs' Complaint throughout speaks collectively of the conduct of the "Defendants" and there are no allegations specifically related to any personal involvement of any of the individual Defendants" . . . [but,] '[i]In order for liability to attach to any of these supervisors, Plaintiff must prove that they did more than play a passive role in the alleged

violations or show mere tacit approval of the goings on.  Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors.'") (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).

Finally, the Court rejects Plaintiff's argument that his motion is not untimely because Defendants "have not filed an Answer or Affirmative Defenses to Plaintiff's Complaint."  (ECF No. 94, PageID.1450.)  This Court has already informed Plaintiff that Defendants are not required to file an answer in this case:

> One further comment is worth making: Plaintiff's motion points out that he "does not know what further discovery is needed" because "Defendants have not filed Answers or Affirmative Defenses." (ECF No. 45, PageID.502.) However, Plaintiff should be aware that the Defendants are not required to answer the complaint or file separate affirmative defenses in this case, as it proceeds under the Prisoner Litigation Reform Act (PLRA) and Plaintiff has been granted in pro per status. (ECF No. 8.)  Under 42 U.S.C. § 1997e(g)(1), "Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law.  Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the complaint." *See also Nouri v. Oakland Cty. Jail*, No. 2:10-CV-13700, 2011 WL 2144639, at *3 (E.D. Mich. May 9, 2011) (Michelson, M.J.) ("As the Supreme Court has explained, pursuant to this provision 'unlike in the typical civil case, defendants do not have to respond to a complaint covered by the PLRA until required to do so by the court, and waiving the right to reply does not constitute an admission of the allegations in the complaint.'") (*quoting Jones v. Bock*, 549 U.S. 199, 21314 (2007), report and recommendation adopted, No. 10-13700, 2011 WL 2135372 (E.D. Mich. May 31, 2011) (Tarnow, J.) The Court has not required an answer from Defendants in this case.

(9/09/2024 Text-Only Order.)  Plaintiff's reliance on the lack of an answer is simply misplaced.

## D. Conclusion

Plaintiff's motion for leave to amend is untimely under the Scheduling Order, brought with undue delay, and the proposed amendment could not survive a motion to dismiss.  For these reasons, as articulated above, Plaintiff's motion for leave to file an amended complaint (ECF No. 94) is **DENIED**.

**IT IS SO ORDERED.**[5]

Dated:  April 20, 2026

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

---

[5] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).